# Willingham & Bell *v.* Whitley.

*Bill to Reform Contract of Sale.*

(Decided November 7, 1914. 66 South. 681.)

1. *Reformation of Instrument; Proof Required.*—The proof must be clear, exact and satisfactory that the instrument does not truly set forth the real agreement between the parties to authorize its reformation by a court of equity.

2. *Same; Evidence.*—The evidence examined and held to show that the contract was not intentionally so written as to leave the respondent not bound thereby.

3. *Sales; Breach of Contract; Measure of Damages.*—The measure of damages recoverable for the breach of a contract to deliver a certain number of bales of cotton at a certain price per pound is the difference between the contract price and the market value of the lowest grade of merchantable cotton at the place of delivery on the day that delivery should have been made.

APPEAL from Clay County Court.

Heard before Hon. E. J. GARRISON.

Bill by Willingham & Bell aginst J. S. Whitley to reform a contract, and for its breach. Decree for respondents and complainants appeal. Reversed and rendered.

CORNELIUS & CORNELIUS, for appellant.

R. G. ROWLAND, for appellee.

McCLELLAN, J.—The bill in this cause was before this court at a previous term, in consequence of an appeal from a decree overruling demurrer thereto.—*Whitley v. Willingham & Bell*, 176 Ala. 264, 57 South. 816. The bill's equity as for the reformation of a contract for the sale of cotton for future delivery, was then approved. ,Upon submission on, pleadings and proof, the court denied relief. The court below was

of the opinion that there was an honest difference of understanding between the parties that went to establish a nonconcurrence of agreement as to material terms of the contract.

The substantial matter offered by the respondent to defeat the reformation prayed and in denial of the mistake asserted in the drafting of the instrument or in its execution was that he (respondent) acceded to the request of Willingham, the member of the firm who alone negotiated or dealth with respondent in the premises, to pretend a sale by him of 15 bales of cotton for future delivery in order to enable Willingham or the firm to effect real engagements for sales for future delivery with others in that section; that Willingham agreed with him that the contract would be and was so framed as to not be binding upon respondent. The signing of the paper, in at least intended duplicate was admitted by respondent.

The law exacts a high degree of certainty in the proof that is requisite to have a court of equity to effect the reformation of written contracts.—*Folmar v. Lehman-Durr & Co.*, 147 Ala. 472, 477, 41 South. 750. We approach the review of the evidence here fully accepting and applying the law's exaction that, to allow resisted reformation of written instruments, the proof must be "clear, exact, and satisfactory" that the instrument does not truly set forth the real agreement of the parties.

The evidence is conflicting upon the vital issue; but the fact alone that the evidence is in conflict does not, of course, warrant a denial of the reformation, if the truth to be extracted from a consideration of the whole evidence is disclosed to the degree of certainty stated above. Whatever of uncertainty is present in this controversy upon the fundamental issue of mis-

take vel non arises out of the credibility to be accorded or that is accorded the testimony of the witnesses on either side of the line. When the whole evidence is taken into view, in connection with the circumstances that serve to illustrate and illuminate the real motives and acts of the parties, we cannot escape the conclusion that the respondent, at the time of contracting, engaged as the contract would provide if reformed in accordance with the prayer of bill. It is not fairly believable, under the whole evidence, that such a pretense as the respondent asserts was the common purpose of Willingham (for the firm) and himself was contemplated or put into execution in any degree. There could have been no inherent advantage to respondent to become a party to so palpable a fraud on people resident of that section. According to his theory, he was to receive no remuneration for his participation in the alleged wrongful project. He makes no claim that any character of inducement was tendered by Willingham. He would place himself in a position that only some reward or remuneration would naturally induce a man to take.

Normally, wrongful conduct is inspired by selfish purpose or the hope of some advantage. It is certainly due respondent to assume that he possessed no such blunted sense of right as that he would participate in the perpetration of a wrong, to mislead others innocent, solely for the gratification that kind of conduct could only afford a man of most unfortunate character. The only plausible confirmation of respondent's contention in this regard is found in the testimony of his son and that of one Denson, both of whom testify that Willingham said to the son, in the presence of Denson, that the father (respondent) was lucky in that the contract was not binding on the father. Wil-

lingham denies this assertion of these witnesses. The evidence is plenary that Willingham (for the firm) persistently acted as upon the theory that his firm had a valid, binding contract with respondent for the delivery of 15 bales of cotton "by or before November 1, 1909." An intelligent man, who had deliberately engaged to create a decoy, as respondent claims was done, for the deception of others innocent in that section, certainly would not be expected to press, as Willingham did, for the observance of the contract as a valid engagement. That insistence by Willingham consisted with the fact that the firm had themselves in turn contracted with cotton buyers to deviler cotton at or about November, 1909. During the month of November, 1909, Willingham and Mr. Jones, who had made a contract, for cotton buyers, with the firm for the delivery by November 20, 1909, of cotton by the firm, went out to the home of respondent to urge him, even then, to deliver the cotton under his contract with the firm. They saw respondent. The matter of respondent's action under the contract was discussed. The distinct weight and preponderance of the evidence, notwithstanding the conflict instituted by respondent's denial of a statement that Jones and Willingham attribute to him, goes to show that respondent did not then assert that the agreement was for a contract so written as to leave respondent unbound in the premises. It is inconceivable that, had that been the fact, the respondent would have hesitated or deferred a moment the assertion thereof as a conclusive response to Willingham's insistence upon respondent's performance of the contract. His failure to assert the agreement he later affirms, when the circumstances at least naturally required that assertion, introduces a potent evidential factor to refute the defense later urged. There is an-

other feature of the evidence that militates against the respondent's contention in this regard. That is the testimony of J. T. Blair and Coston Barfield. The latter said respondent told him, on the day the contract in question was made, that he (respondent) had sold 15 bales of cotton to appellants. Respondent, on the cross-examination, denied having any such conversation with Barfield; but on the redirect he said: "Some time after that I did have a conversation with Mr. Coston Barfield and told him I had a sorter of a contract with Willingham and Bell and explained to him what it was, and he laughed and says that is no contract at all."

Barfield does not appear to have any interest in the litigation; and when his positive testimony, and that of Blair to very similar effect, is contrasted with and measured by that, in this connection, of respondent, it is quite clear that every probability favors the accuracy and correctness of the Blair and Barfield statements. If, as respondent testified, he told Barfield, in the fall of 1909, that the contract with appellants was a deliberately devised decoy, it is most remarkable that, when urged by the firm to perform it, he did not state to them what he asserts he told Barfield. Our conclusion is that the complainants are entitled to the relief prayed; and that the decree appealed from is laid in error, and must be reversed.

The remaining question is the damages complainants are entitled to recover for the failure of the respondent to deliver 15 bales of merchantable cotton, under the contract made as reformed, by November 1, 1909. This element of litigable right was affirmed on former appeal to be complainants' due under the bill, provided, of course, complainants indicated their right to have the contract reformed and a breach thereof was

[Willingham & Bell v. Whitley.]

shown, as has been done. Under the contract, (as reformed) the respondent was not in default in respect of delivery until November 1, 1909. That was the last day within which he could deliver and meet the obligation he had assumed. On that day he could, under the contract as reformed, have delivered the lowest grade of merchantable cotton, and still have complied with his contract.—176 Ala. 264, 57 South. 816. So, no delivery having been made, the measure of complainant's recovery is the difference between the contract price, viz., 10 cents per pound, and the market value at Lineville November 1, 1909, of the lowest grade of merchantable cotton. What grades or types of grades of cotton were subsequently (that year) raised in that section or by respondent in the year 1909 was and is immaterial. The contract, before or after reformation, did not stipulate for the delivery of cotton grown by respondent. From the whole evidence it appears with satisfactory certainly that the market value of the lowest grade of merchantable cotton at Lineville on November 1, 1909, was 12 cents per pound; the highest price for "good middling cotton" being from 14¾ to 15 cents the pound. The complainants' damage was 2 cents the pound on 7,500 pounds (15 bales weighing 500 pounds each), making $150.

The decree appealed from being reversed, a decree will be here entered reforming the contract as prayed for in the bill, and awarding the complainants damages in the sum of $150, for the collection of which execution shall issue.

Reversed and rendered.

SAYRE, DE GRAFFENRIED, and GARDNER, JJ., concur.